Our next case on calendar is United States v. Read, 21-50154. Each side will have 10 minutes. Good afternoon, and may it please the Court. Andrew Talai on behalf of Defendant Helen David Read, who is a transgender woman that uses the pronouns she and her. I'd like to reserve two minutes for rebuttal, and I'll keep an eye on the clock. This is an appeal from the denial of compassionate release, where it's undisputed that the District Court violated ARRUDA and based its decision on clearly erroneous facts. Ms. Read, respectfully. Can I ask about the ARRUDA issue? In that case, and in the others that I've seen, the part of the regulation that was relied upon was the one about danger, right? Here, it's the extraordinary and, what is this, the phrase? Extraordinary and compelling reason. And compelling reason. That's in the statute, right? Yes, Your Honor. And the fact that a medical condition would be one of those things is sort of commonsensical. So what is the relevance of the regulation in this case? Well, Your Honor, the District Court certainly applied ARRUDA 1B.1.13. Well, it read it, and he didn't say it was or wasn't binding, and then he talked about what he thought was an extraordinary and compelling circumstance. But, I mean, the way it was defined in the regulation and the way it would just read the statute anyway were basically the same. What difference did it make? Well, Your Honor, our position is that the District Court did treat 1B.1.13 as binding and said as much. And did it do anything different? And what it would have done if it didn't? I mean, he came to this conclusion, which is a somewhat surprising one, but has some support in the CDC's standards, that HIV was not a special risk. That's actually not correct, Your Honor. At the time of the decision, it was considered that HIV could present as a severe illness. It could create a chance of severe illness or death for someone who also has COVID-19. So just to be clear, at the time of the District Court's decision, that was factually incorrect, and it's undisputed. But the court did say that. I think Judge Burson was just asking whether that was what the court concluded. I don't think that's what the court concluded. The court did say at the beginning of its Section 3553A analysis that assuming extreme and compelling reasons exist, and then went on to do the analysis. But I think that's a legal conclusion, an assumption that even if the defendant could satisfy the standard, and then going on. But I don't think that those are, you know, fair formulas. Well, all I'm trying to say is why aren't we just looking at the extreme and compelling circumstance question straight on and see whether the judge's conclusion, if there wasn't one, is supported by the record instead of worrying about the regulation in this particular case. Because unlike the other instances, the regulation doesn't really add anything to the statute. That's all I'm saying. So why can't we just go straight at the question of whether there was support in the record for what the judge concluded about HIV and COVID? Well, I think if you wanted to look at it that way, Your Honor, the record does not support that conclusion. But I think it's far from clear that the District Court's application of 1B1.13 as binding did not affect the rest of its analysis. It did say that the dangerousness requirement from 1B1.13.2 is mandatory. And we can't really tell from the explanation that it gave whether or not it incorporated that into the Section 3553A factors. So I think it's far from clear that it didn't, in fact, result. I'm sorry, Mr. Reiner. Is your argument that in applying the 3553A factors that the District Court clearly erred into determining he was a danger to the community because of his recidivism and continued fraudulent behavior? No, Your Honor. There's two points on the Section 3553A factors. The first is that the District Court's assessment of the medical risk to the defendant was clearly erroneous. Again, that's undisputed here. So any response on that point is waived. And that error necessarily permeates the Section 3553A factors. But that wasn't what animated the District Court's concern under 3553A. As I read Judge Carter's order, he essentially said, look, I've got somebody with a very long criminal history here and who engaged in continuing fraudulent behavior while he was still on supervised release from his prior fraud conviction in the Northern District of California. And I find that his release should not be granted for that reason and that that was the predominant reason why he did not grant the motion. I understand, Your Honor. And for purposes of this point we're making, we're not actually talking about the substantive assessment of the sentencing factors. We're talking about significant procedural errors that the District Court made and that would ordinarily warrant a vice-chair and remand. The question is, what difference does it make? Because if the court is concerned that releasing this man to the community is going to pose a danger to the community, and I'd be hard-pressed to declare that clearly erroneous on giving your client's criminal history and behavior while on supervised release. I'm having a hard time understanding why it was error not to grant compassionate relief. Well, Your Honor, that dangerousness requirement is not part of the analysis after a readout. Wait, this is the question. 353A, 3553A, is an independent requirement for compassionate release, right? I don't think it's actually independent. It's certainly a factor in the analysis, but our position— How far is it as an independent category? Keller says that there are two things that a court should inquire into. First is extraordinary and compelling reasons, and the second is the Section 3553A factors. But the idea that there's some kind of firewall between those two requirements is not accurate. This is a matter of common sense. Factually, those two inquiries will often dovetail, particularly in a case like this one when you're talking about medical risk. Well, is your argument that the medical risk should have been included as part of the 3553A factors? It necessarily should, Your Honor. That may be right, but it's nowhere in your brief. Well, I believe it's in our reply brief. Where are you looking? Well, we make the argument in the reply brief in response to the government's contentions about Keller that the error, the factual error on the extraordinary and compelling reasons prompt necessarily dated its assessment of the 3553A factors. That's a different argument from arguing that the medical issue was part of her individual circumstances that should have been considered as part of the 3553A factors, which you never made to say. Your Honor, I think that's just common sense under the history and characteristics of the defendant. It may be common sense, but you never made the argument. Well, Your Honor, the other argument I would make is that even under the government's reading of Keller, where the two inquiries are mutually exclusive, which cannot be disagreed with, the district court again committed two significant procedural errors. The first is it erred in incorporating clearly erroneous facts into its analysis and assessment of the section 3553A factors, and the second is that it effectively refused to consider post-sentencing rehabilitation. The clearly erroneous fact is the status of HIV's relationship to COVID, or the clearly erroneous fact is not taking into account the rehabilitation? The clearly erroneous facts, there are at least three of them, and these are based on evidence that was presented to the district court at the time. The first is that it failed to recognize that HIV increases the risk of severe illness or death from COVID-19. Okay, so let's just pause there for a second. So it seems that there's a good argument that you're making that that's wrong, but how do we know that it was wrong at the time, given what the CDC was saying at the time? Well, in our brief at AOB, I see I've crossed into my rebuttal time. It's okay, go ahead. In AOB 829, we cite a link to a web archive version of the CDC's guidance from May 13th, and I also have a copy of it, and at that point, the CDC did clearly say that HIV was a high-risk factor, or in the district court's words, it was on the list. So that was just flat-out wrong. Can you say again where that is in the record? It's at AOB 829, and there's a link in our brief to a web archive version of the CDC's guidance. So that was available at the time. But in addition, if you look at 2ER18, there's the Tesoriero study that Ms. Reed cited below, and that's the one that suggests that treatment status or the CD4 cell count isn't particularly relevant and that anyone, all people who have HIV, are at risk of spirit illness or death from COVID-19. But that's not the only fact that the district court missed. The district court also wrongly assumed that COVID-19 vaccines are equally effective for people who have immunocompromising conditions, and it also relied on obviously stale and incomplete data about the spread of COVID-19 at FCI Phoenix. Again, none of this is disputed by the government, and therefore the response on those points is waived. So the government's brief does not deal with the merits of the COVID issue at all? No, Your Honor. I think that's fair. That's where my conscience is. If there are any other questions, I reserve the remainder of my time for rebuttal. Thank you. Okay. Good afternoon. May it please the Court, Patrick Fitzgerald, on behalf of the United States, to clarify the government position, Your Honors. We agree that in analyzing the first requirement, putting the administrative exhaustion requirement to the side, the district court, it looks like, certainly possibly did not follow the rule in ARRUDA. We did not concede or say that the district court committed any clear error in its factual. They also didn't say it didn't. You have no discussion in your brief with us. Well, Your Honor, we did say at the end that the defense was arguing based on material that was not in the record before the district court, including studies and other matters. So for purposes of our brief in the district court, and at the time when the defense filed its reply, which sort of created the universe for the district court, it was correct to say, as the district court did in its order, which we cited, that the CDC risk factors did not include HIV scanning alone. And, of course, as we all know, over the last two years, what we know about COVID and the information that is state-of-the-art can vary at any particular time. And that is why, as a practical matter, it does make sense, following Keller, that to a certain extent, the record that the district court should be looking at should include the material that was presented to the Bureau of Prisons, because Congress did want the Bureau of Prisons to decide these matters first. So if... But it's a very strange way to proceed when you have a moving target like COVID. We're just... If we did what you are suggesting, instead of asking the district court to look at, at least look at obviously traditionally noticeable documents at the time that it's deciding the case, we would end up with just a run for it. I mean, basically you say, well, she could have filed another one. We're now several years down the line, and she can file another one, and then she can file another one, and then we can all be here whenever the science about COVID-19 changes, essentially, is what you're saying. Well, yes, Your Honor, but between having unnecessary remands, which will be unclear as to what records should be considered by the district court, and affirming the district court and allowing a new motion if the facts warrant it, the second one is both practically, doctrinically, and I think in fairness to the parties, the best way to proceed, recognizing that all of us, lawyers, defendants, the district court, this court, to a certain extent in these extraordinary circumstances, we are going to be chasing a moving target. But certainly the district court, based on what it had in front of it, did not commit clear errors. Your basic position is that this matters. Yes, Your Honor, that is correct. And so with regard to that, my question is, wouldn't the medical situation be part of what should have been considered as part of the 3553A factors? Your Honor, certainly the medical condition is something that is a 3553A factor, but it is within the discretion of the district court to determine what weight to give it, and it is within the discretion of the district court here to say that, based on the defendant's recidivist conduct and based on other factors, based on the less than sterling disciplinary history in the Bureau of Prisons, that whatever factors have been presented by the defense do not outweigh those concerns. In the 3553A analysis, the district court didn't mention her medical situation. Yes, Your Honor, but it did recognize her rehabilitation arguments, and moreover, it had previously discussed the medical situation, which, again, there was not clear error when it was discussing. That was whether it was an extremely compelling reason, but whether it was itself an extremely compelling reason, it still should have been part of the 3553A factors, no? Your Honor, I think reading the court's opinion through it, being aware of the medical issues, it determined, as it reasonably could under its discretion, that the other factors it was mentioning in the 3553A factors overrode or should deserve more weight than what the medical issues were, and that was a mistake. Did she have HIV at the original sentencing? She did, Your Honor, and that was one of the mitigating factors that was presented by the defense, along with her methamphetamine addiction and her challenging life circumstances as, at that time, a gay man. Are you referring to ER 4 and 5? That's the bottom of the court's order that begins with discussion and then runs over into 5? It does appear to me that the court is taking consideration of her medical situation, but then on page 5 basically finds that it's just not outweighed, or it is outweighed by the recidivism and the disciplinary record and danger to the community. Yes, that's correct, Your Honor. The first full paragraph on ER 5, the second page of the order, that's where the court says, referring back to the medical discussion, even if defendant had demonstrated an extreme and compelling reason, the court finds the consideration of the 3553A factors and then mentions these factors that we stated here and then in our brief. And ARUDA does not compel a remand under these circumstances. Sorry, can I just ask? So if we agree with you that it wasn't clearly erroneous to think that HIV wasn't a high-risk factor at the time with the CDC, it seems like COVID could have still been a new factor from the original sentencing in connection with HIV if HIV was some in-between-level risk factor or something, like not the highest but somewhere in the middle. Do we know what the record said about that? Well, Your Honor, we know that the defendant's medical argument was fully presented in the papers that were before the district court in regard to the compassionate release. But so, yes, in that sense. But, like, was the debate about is it high risk or zero, or was there a spectrum? What was the nature of that discussion? Well, the discussion at the time, Your Honor, was the government saying that HIV alone was not a CDC high-risk factor. And that, for the government. Well, was there a risk factor, whether it was a high-risk factor or not a high-risk factor? Not at, I didn't. Yes, at the time of the hearing. Though there was no hearing. I mean, at the time of the decision. At the time of the decision, yes. It was a risk factor if the government had filed its brief on the day the court issued its ruling. And since that was, we would have agreed HIV was a risk factor, except. And this, again, is why it's such a moving target. We would then have also considered the vaccination status of the defendant. And so, our position would have been, if it wasn't a risk factor, we would have said, no, extraordinary and compelling reason. If it was a risk factor and there weren't vaccines, we would have said it was an extraordinary and compelling reason. Once there were vaccines, then we would have gone back and said, no, it's not an extraordinary and compelling reason. Just because I'm curious, I mean, as a general matter, my impression is that the district courts have viewed people with HIV as sufficiently at unusual risk from COVID for that to be taken into account. Is that true? Yes. Is this an outlier case in terms of how it's treating HIV and COVID? No, Your Honor, because, again, since at the time it wasn't a CDC risk factor, that would have been well within the heartland of decisions. Alternatively, there are, of course, cases in courts that said, no, I think HIV, standing alone, is something that is extraordinary. Even at this time? Yeah, even at that time. That's what I thought. I thought this was sort of an outlier. Well, outliers, I think there were cases. Mostly people. I mean, whether they let the people out or not, they at least recognized a fairly commonsensical thing, which is that if you have something called a human immunosuppression disorder or whatever the I stands for, you probably have an immunosuppression problem and you probably are at risk for COVID. Even though the numbers hadn't quite shown up yet, they did eventually show up, and they had shown up by the time of this year, this decision. Well, Your Honor, with respect, I think given the broad spectrum of people living with HIV, some have zero viral loads, some have perfectly normal CD4 counts. And, you know, with respect, that quote-unquote common sense or gut reaction is not necessarily consistent with the medical literature in any event. It was certainly something that district courts have the discretion to decide. And, again, they have decided that in different ways, which is not to say that any of them abused their discretion. And, of course, our point is that the district court did not abuse its discretion here, particularly since in the Chambliss case, for example, from the Fifth Circuit, to be blunt, if the defendant had full-blown AIDS and was potentially in a terminal situation, which quite fortunately she is not, nonetheless, the district court would have been within its discretion to say that because of the criminal history category six, because of the particularly deplorable nature of the crimes. Can I ask, it seems like an assumption the government is making is that she is vaccinated. Is that in the record? It is not. It was not in the record before the district court, and, therefore, it is not in the record before this court. We made a proffer as to what we would establish if the court thinks it wants us to expand the record on that point. But, again, if we're going to be chasing that, I respectfully suggest the best way to do it is with a new motion by the defendant that will have the most up-to-date information, both in the guidance from this court as to the law, and then as to the current record on the defendant. But it seems like you were starting to say that at the time the district court made the decision, the CDC had changed what it was saying about HIV, and the district court did not know that she was vaccinated. So how, if we put those two things together, do we get to there being no error here? Well, Your Honor, because the point of decision should be when the parties established the record before the court, as opposed to what happened afterwards when the court issued its ruling. Well, of course, one problem here is there was no hearing. Since there was no hearing, the plaintiff had no way of knowing when the district court was going to issue its ruling. I mean, the obvious thing would have been if there was a hearing that had been noticed, the defendant should have proffered the additional information, but it had no timeline. There was no timeline. Right? That is correct, Your Honor. Though I can say, given that we have had over 600 of these motions in just our district, and because the courts have consistently said there is no constitutional or statutory right to a hearing, it would be no small matter to state that the district courts should, as a matter of routine, hold a hearing. Some of the district courts have reviewed. So the defendant should have, every time the CDC changed its rules or there was a new study or whatever, just sent some more material in. Well, Your Honor, many of the changes would not have been relevant to this particular defendant, but certainly, yes, in this case, if there was a significant change in the facts, that would have been the best way to proceed. But, again, the failure to do that, to a certain extent, is not fatal, because if there was a fact that was not presented to the district court and the defendant in good faith believes that there is now a different calculus under the 355-3A factors, the defendant can file a new motion. Again, I'm not encouraging. We've had 600 of these already. I'm not encouraging. And you are. Well, given, if the facts justify a new motion, Your Honor, we've already had some defendants, not this defendant, but other defendants, who essentially have become fixations, litigants, and I think both the district court and this court should have the means to deal with that. But here, instead of chasing these cases. But you haven't had 600 HIV cases. We have nine, Your Honor. We've taken you way over your time, so thank you, counsel. Let's do two minutes for rebuttal, please. Thank you, Your Honors. Just three quick points. First, the government says that they're not conceding clear error. As Judge Berzon pointed out, they don't make any argument about the clear error or not of the medical facts in their answering brief. And so under this court's decision in Ramirez, at page 956, I note three, that argument is waived. Well, I have a paragraph at the end. What about that paragraph at the end? I don't think that was sufficient to raise the argument, Your Honor. The second point I wanted to make is there's been some confusion up here about when the CDC's guidance changed. And so just to be clear, before the district court's decision, as of May 13th, the CDC did say that HIV infection, having HIV, human immunodeficiency virus, can make you more likely to get severely ill from COVID-19. And so the link that the district court cited at 1ER4, in its opinion, that link was not accurate. The assessment of that judicially noticeable document was not accurate at the time of the decision. So that's clearly erroneous. The third- But it was okay at the time of the briefing? At the time of the government's opposition. I think that was correct, but a couple of weeks afterwards, by May 13th, it changed. Given the CDC's constantly changing guidance, is that properly judicially noticeable as uncontested under Rule 201? I believe it is, Your Honor, but that's not the only source of evidence. As I mentioned earlier, there's also the Tesorario study that was cited in our brief below in the district court, and that evidence was also clearly before the court, and it overlooked it and completely disregarded it. But also, if it's not judicially noticeable, then what- Why did it rely on it? Yeah, why Judge Carter relied on it wasn't valid either. So either way, I think the court clearly erred on that fact. I also wanted just to answer Judge Berzon's question about courts granting compassionate release to people with HIV. We cite a bunch of those cases that are AOB at page 37 to 38, and so that is pretty routine. Are there a bunch going the other way too, though? There are some going the other way, and ultimately it is up to the district court and its discretion. But the idea that someone who has HIV, as the district court put it, is not medically eligible for compassionate release, I think that was clearly erroneous. Factually, also, it was tainted by its inappropriate application of the guideline. And then just the last point I wanted to make was also in response to Judge Berzon's question. At page 15 and 16 of our replies, where we make the argument about- I have a question. There it is. In July 2021, on the ACGC website of some kind, COVID-19, what to know about HIV and COVID-19, it says, we believe people with HIV or an effective HIV treatment have the same risk for COVID-19 as people who do not have HIV. So that was after the date that you're talking about. I don't believe that was the CDC's guidance, Your Honor. It is, and I've been looking at it right now with my own eyes. Well, I think our- I think it's back to my 201 question. I mean, if it's subject to reasonable dispute, then how can you say it was error for the district court? Either way, I think, Your Honor, I think the district court's determination, then, by relying on- if you want to say that it was not intentionally noticeable by relying on it, that was inappropriate as well. When there was record evidence at 2ER18, a scientific study that established directly- But I still don't think that you've addressed squarely the fact that, the district court alternatively ruled under 3553A, that all of those mitigating factors were outweighed by recidivism, disciplinary record, danger to the community. I don't think that's what the district court said, Your Honor, but our position is that- Well, that's how I'm reading the court's order. Well, our position is that the procedural errors that the district court made in assessing the section 3553A factors is enough to at least require a remand. Mr. Hall, I guess, without regard to this dispute over HIV, he lists everything that the defendant presented in terms of mitigation, said, I consider them, but I find that they're outweighed by these other facts, and I'm having a very difficult time seeing where the district court abuses discretion in that determination. Respectfully, Your Honor, on that point, I don't think that's what the district court said. On E.R. 5, the district court goes through its assessment of the section 3553A factors, and it concludes that, in its view, they don't weigh in favor of relief. It stops there, and then after that, it mentions the post-sentencing rehabilitation, but it quickly dismisses that evidence, and it says, well, she already got some relief. Well, he did depart downward at sentencing below what both the probation officer and the government had recommended for a recidivist offender. I mean, she got a pretty good break. Well, Your Honor, she only got five months off the high end of the guideline range, so I don't think it was lenient, but in addition, and this is something the government never responds to, and it's answering her brief, the reason that the court went down five months from 75 months to 70 months had nothing to do with mitigation. It was because, in the court's words, it said it did not like the open plea that was presented in this case. Well, I think, Your Honor, that it's hard to tell exactly from the transcript, but I think what the judge was saying is that, you know, there was no – the defendant didn't get the benefit of a plea agreement, and so she let it open in court, and for whatever reason, it felt that that was not fair, and so it decided that it didn't like that, and it gave her five months off, and that's at page 2ER, 105 to 108. And so I don't think that you can look at this record and say that, well, the district court gave her some leniency because of her medical condition. In addition, obviously nobody knew that 6 million people in the world would die, and nearly a million people in the United States would die from the COVID-19 pandemic, and so I don't think it's necessarily fair or accurate to say that the district court was contemplating the kind of extraordinary and compelling circumstances we have here. Can I ask you, if we take the – I know you don't like this, but let's take the moment of the government's brief just as a moment in time for a second. If we think that at that moment in time, the CDC was not saying that HIV was a high-risk factor for COVID, and to get to the extraordinary circumstances, you need high risk, was there something before the court that said even if it's not high risk, it's somewhere in the middle making the punishment of being in prison worse given COVID or not? Yes, Your Honor, so by the time of our reply – Oh, no, time of the government brief? Let's just talk about that for a second. Not that I'm aware of at the time of the government's brief. Okay, but at the time of the reply, then what? Yes, so by the time of the reply, the CDC guidance that we've discussed, and again, the Tesoriero study that we cited, 2ER18 scientific study, that said that HIV increases the risk of severe illness or death from COVID-19 regardless of antiretroviral treatment status and CD4, which is by blood cell count, and I think that's powerful evidence that the district court did not even address in its order. Just one last thing. Where in the ER is this May document that you're talking about? Which document, Your Honor? The May CDC document. Oh, that is not in the ER, Your Honor. That's a link in our open brief. It's the web archive version of the link that the district court cited in its opinion at 1ER4. That the district court cited? Yes, so if you look at 1ER4 – Because I've just been looking, and I can't find the version that you're talking about. The district court cites in its order a website, which is certain medical – for COVID-19, and so the district court cited that. It also appears in the government's opposition for the proposition that essentially HIV is not serious when it comes to COVID-19, that people who have HIV are essentially – You're saying by May that was changed, that people went on the list? Right, so by the time the district court's order, that link did not stand for that proposition. And you found that by doing one of these way-back things to find people? Yes, Your Honor. But in fact, still in May, the other document, which talks specifically about HIV and COVID, said that for people who were taking their medication in something or other, it wasn't an elevated risk. I'm not sure which document Your Honor is referencing, but the actual evidence that the exhibit – It wasn't an exhibit, but it was cited in the reply brief. That evidence was before the court, and that's at 2ER18. What should we do if the CDC now says – I haven't actually looked at the Today website, but if the Today website says HIV is not a risk, what moment in time are we using? Well, Your Honor, I looked at this earlier, and it is still on the list. I think now it says very likely to get sick. They change the verbiage quite often, but it's essentially still on the list of these conditions that are considered to be high risk. So it does still appear there, but I think it would be safest to just focus on the evidence that was before the court at the time of this decision. And I think just on that evidence alone, it's clearly erroneous, and it's undisputed on appeal. It wasn't before the court. It was before the court because he could have shut it down and looked it up. Well, I've seen that when you cite a link on the day you're writing the order. I didn't see which one it was. You see what it says, yes. So he cited this link, and the link on the day he cited it said what you said. I believe so, Your Honor, and if you'd like, I could submit something with it. But if he wrote it two weeks earlier, and then it sat on the clerk's desk as they were on vacation or something, it was right at the time he wrote it, maybe. I'm not sure, Your Honor. Okay. Thank you. Sorry, thank you. We've gone way over the time, but thanks to both sides for the very helpful arguments. This case is submitted.
judges: BERZON, TALLMAN, FRIEDLAND